UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - - - - X

JENNIFER BABCOCK, an individual; on
behalf of herself and all others
similarly situated,

                                            ORDER

                            Plaintiff,      1:14-CV-3124 (MDG)

       - against -

C. TECH COLLECTIONS, INC., a New York
Corporation; JOEL R. MARCHIANO,
individually and in his official
capacity; JAMES W. ARGENT,
individually and in his official
capacity; CYNTHIA A. MICHELS,
individually and in her official
capacity; and JOHN AND JANE DOES
NUMBERS 1 THROUGH 50,

                            Defendants.

- - - - - - - - - - - - - - - - - - X

LINDA CAMPBELL-HICKS, individually
and on behalf of all others similarly     2:14-CV-3576 (MDG)
situated,

                            Plaintiff,

       - against -

C. TECH COLLECTIONS, INC.,

                            Defendant.

- - - - - - - - - - - - - - - - - - X


GO, United States Magistrate Judge:

     Plaintiffs Jennifer Babcock and Linda Campbell-Hicks brought

these consolidated actions alleging that defendants violated the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et

seq., by sending collection letters to consumers in which they attempted to collect unlawful fees for payments made by credit card. Plaintiff Babcock additionally asserted a claim for violation of § 349 of the New York General Business Law ("NY GBL"). After consenting to having me hear all matters in this action pursuant to 28 U.S.C. § 636(c), the parties have moved for final certification of the provisionally certified class pursuant to Fed. R. Civ. P. 23(a) and (b) and final approval of the settlement of this class action pursuant to Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2014, plaintiff Babcock commenced her class action on behalf of herself and similarly situated individuals against C. Tech Collections, Inc. ("C. Tech") and its controlling officers, Joel R. Marchiano, James W. Argent and Cynthia A. Michels (the "Babcock Action"). On June 6, 2014, plaintiff Campbell-Hicks filed her lawsuit against only C. Tech (the "Campbell-Hicks Action"). Both plaintiffs allege in their respective complaints that each and putative class members received collection letters stating that a "$3.00 convenience fee will be added for credit card payments." Plaintiffs claim that the letter is an unlawful attempt to collect an unauthorized fee for payments made using a credit card, in violation of the FDCPA and, as to the Babcock Complaint, section 349 of the New York

General Business.  See Babcock Action, DE 1[1] at ¶ 58 (alleging

violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692f,

and 1692f(1), and NY GBL § 349); Campbell-Hicks Action, DE 1 at

¶ 21 (alleging violation of 15 U.S.C. §§ 1692e, 1692e(2),

1692e(5), and 1692e(10)).

After engaging in written discovery, the parties began

settlement negotiations, including participating in several

settlement conferences by telephone and in person with the Court.

After the parties reached an agreement on the relief to the

class, plaintiffs filed a motion for conditional certification of

the class action and preliminary approval of the class action

settlement on July 13, 2015.  DE 30.  Plaintiffs also filed a

joint motion to consolidate the Babcock and Campbell-Hicks

actions.  DE 29.

At a hearing held on July 23, 2015, the Court granted the

parties' motion for consolidation.  See minute entry dated

7/23/15.  In the course of the hearing, the parties agreed to

amend the Settlement Agreement to provide that the agreed upon

service awards for the named plaintiffs would be subject to court

approval and any disallowed amounts would revert to the

settlement fund for class members.  Id.  On July 24, 2015,

plaintiffs filed an amended settlement agreement (the "Settlement

Agreement").  See DE 32.

---

[1]  Unless otherwise specified, future references to filed
documents shall be to the file number appearing on the docket
sheet of the Babcock Action.

This Court then entered an order granting both motions, (1) conditionally certifying the proposed class for settlement purposes, (2) preliminarily approving the Settlement Agreement, (3) appointing plaintiffs' counsel as class counsel, and (4) approving the proposed class notices of settlement of the litigation. <u>See</u> DE 33. Specifically, this Court provisionally certified a settlement class consisting of two subclasses, the second of which was a subset of the first. The classes are defined as follows:

> (1) All consumers to whom Defendants mailed a written communication in connection with an attempt to collect a debt, which included a statement that a "$3.00 convenience fee will be added for credit card payments," regardless of whether such fee was paid or not, during a period beginning May 19, 2013, and ending June 9, 2014 ("Class #1"); and

> (2) All consumers to whom Defendants mailed a written communication in connection with an attempt to collect a debt, which included a statement that a "$3.00 convenience fee will be added for credit card payments," and who paid such a fee, during a period beginning May 19, 2011, and ending June 9, 2014 ("Class #2").

Under the Settlement Agreement, the defendants agreed to fund a settlement in the total amount of $90,726.00. From this fund, the named plaintiffs will each receive a payment of $1,000.00 for their individual statutory damages claims under the NY GBL, plus a service award of up to $3,500.00, subject to court approval; and plaintiff Babcock will receive an additional $153.00 for her claims brought under New York General Business Law § 349 for actual damages sustained. The remainder of the

settlement fund will be distributed to members of the two subclasses who file timely claim forms. A minimum of $12,000.00 will be made available to members of Class #1 and $69,573.00 will be made available for Class # 2 members for actual damages sustained -- i.e., reimbursement of all payments made to the defendants for the $3.00 charge for payment by credit card. Any unclaimed portion of the $69,573.00 fund for Class #2 members and any disallowed service award to the named plaintiffs will be added to the fund for Class #1. Each member of Class #1, including each member of Class #2, who timely submits a claim form is entitled to an equal[2] portion of the total fund for Class #1 members. To the extent that there are any funds from un-cashed, expired settlement checks, those funds will be paid over to a cy pres award to be distributed to the National Consumer Law Center. The parties further agreed that plaintiffs are the prevailing parties under 15 U.S.C. § 1692k, and that defendants would pay reasonable attorneys' fees and costs, which the parties would attempt to negotiate later.

---

[2] The parties discussed at settlement conferences and hearings on the motions for preliminary and final approval of the settlement that the fund for Class #1 would be distributed equally among class members. The notices sent to class members stated the "Net Recovery Fund," which would consist of the original $12,000 for statutory damages to Class #1 members, plus unclaimed portions of the actual damages fund for Class #2 members and any disallowed service awards, would be divided "equally" among all members of Class #1 and Class #2. See DE 40-2 at 9, 21. Although the plaintiffs refer in their submissions and in the Settlement Agreement to a "pro rata" distribution of funds to Class #1 members, this Court assumes that they meant a per capita distribution to all class members who filed claims, including plaintiffs.

On November 10, 2014, Babcock filed her motion for final approval of the Class Settlement and indicated that 3,710 members of the proposed classes had filed claims,[3] eight persons had requested to be excluded, and no one had objected. Radetich Decl. (DE 40-2) at ¶¶ 9, 10. Of the 3,710 persons who returned a claim form, 3,244 are from Class #1 and 466 are from Class #2. Id. at ¶ 9. At the fairness hearing, the Court granted plaintiffs' unopposed motion to extend the time to submit claim forms to November 17, 2015. Such extension permits inclusion of the late claims of James Joseph, Kelly Laterra, Janice Knight and Cherylann Hionas. See minute entry dated 11/17/15; ct. docs. 42, 45. By the Court's calculation, each member of Class #1 will receive approximately $21 and each member of Class #2 will receive reimbursement of all actual damages sustained, plus a per capita share of the fund for Class #1.

On the eve of the fairness hearing, plaintiff Babcock entered into a stipulation with defendants in which defendants agreed to pay $55,000 to counsel for Babcock for attorneys' fees and costs. See DE 40-3. After the fairness hearing, plaintiff Campbell-Hicks and defendant C. Tech entered into a stipulation for payment of $30,000 to counsel for Campbell-Hicks for

---

[3] This Court notes that Youssouf Diakite, Rosetta Rose and Bernadette Pierre sent their signed proof of claim forms directly to the Court prior to the deadline for filing claims. See DE 34, 35, and 37. Since these claims were timely sent, but may not have been submitted to the Claims Administrator, this Court directs plaintiffs' counsel to insure that these claimants are included on the list of members of Class #1.

attorneys' fees and costs.  <u>See</u> Campbell-Hicks Action, DE 29 at

29.  These payments are separate and apart from the funds

provided under the Settlement Agreement.


<u>DISCUSSION</u>

I.  <u>Final Certification of the Settlement Class</u>

The Court certifies the following classes under Fed. R. Civ.

P. 23(e), for settlement purposes:

> (1) All consumers to whom Defendants mailed a
> written communication in connection with an
> attempt to collect a debt, which included a
> statement that a "$3.00 convenience fee will be
> added for credit card payments," regardless of
> whether such fee was paid or not, during a
> period beginning May 19, 2013, and ending June
> 9, 2014 ("Class #1"); and

> (2) All consumers to whom Defendants mailed a
> written communication in connection with an
> attempt to collect a debt, which included a
> statement that a "$3.00 convenience fee will be
> added for credit card payments," and who paid
> such a fee, during a period beginning May 19,
> 2011, and ending June 9, 2014 ("Class #2").

This Court finds that plaintiffs meet all of the

requirements for class certification under Fed. R. Civ. P. 23(a)

and (b)(3).  Rule 23(a) of the Federal Rules of Civil Procedure

requires that any proposed class action: "(1) be sufficiently

numerous, (2) involve questions of law or fact common to the

class, (3) involve class plaintiffs whose claims are typical of

those of the class, and (4) involve a class representative or

representatives who adequately represent the interests of the

class."  <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010).

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(1) because there are over 70,000 potential class members and therefore joinder is impracticable.  See Consol. Rail. Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(2), because plaintiffs and the class members share common issues of fact and law.  The claims all arise from the same boilerplate collection letter sent by the defendants imposing a $3.00 charge for payments made by credit card. See Marisol A. ex rel. Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir.1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact").

For the same reasons, plaintiffs satisfy Fed. R. Civ. P. 23(a)(3), typicality, because plaintiffs claims arise from the same factual and legal circumstances as those of the class members.  See Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).

Plaintiffs also satisfy Fed. R. Civ. P. 23(a)(4) which requires that "the interests of the class" be "fairly and adequately protect[ed]."  In making such a determination, the court must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.  Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  Plaintiffs' interests clearly are not antagonistic or at odds with the class members.  See Diaz v. Eastern Locating

<u>Servs., Inc.</u>, 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); <u>Prasker</u>, 2010 WL 476009, at *2.

Plaintiffs also satisfy the requirements of Rule 23(b)(3). This requirement is met "if resolution of some of the legal or factual issues that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." <u>Myers</u>, 624 F.3d at 547 (internal citation and quotation marks omitted). Plaintiffs' common legal claims clearly predominate over any factual or legal variations among class members given the allegations in the complaint. <u>See</u> <u>Diaz</u>, 2010 WL 2945556, at *2; <u>Prasker</u>, 2010 WL 476009, at *2. For the same reason, plaintiffs satisfy the superiority requirement because the class action mechanism will enable disposition of thousands of similar claims in one forum, conserving judicial resources and benefiting class members, particularly those who lack the resources to bring their claims individually. <u>See</u> <u>Rodolico v. Unisys Corp.</u>, 199 F.R.D. 468, 479-80 (E.D.N.Y. 2001) (class actions provide a superior method for "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications").

II. <u>Approval of the Settlement Agreement</u>

In evaluating a proposed settlement under Rule 23(e) of the

Federal Rules of Civil Procedure, the Court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate. See Joel A. v. Giuliani, 218 F.3d at 138. Settlements are strongly favored as a matter of policy, because, "[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time." Evans v. Jeff D., 475 U.S. 717, 761 n.15 (1986). Courts should exercise their discretion "in light of the general judicial policy favoring settlement.'" In re Sumitomo Copper Litig., 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (citation omitted); accord Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002).

A court evaluating the fairness of a settlement should examine both procedural and substantive fairness. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85-86 (2d Cir. 2001).

A. Procedural Fairness

In reviewing the procedural fairness of a settlement, a court "must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery necessary to effective representation of the class's interests.'" D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d

61, 74 (2d Cir. 1982)). A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation. See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 117 (2d Cir. 2005); see also McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009). In addition, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is 'entitled to [] great weight' . . . . [and] there is thus a strong initial presumption that the compromise as negotiated herein under the [c]ourt's supervision is fair and reasonable." In re Michael Milken and Assocs. Sec. Litig., 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (internal citation omitted).

The parties reached this settlement after the parties had conducted discovery regarding the boilerplate letter at issue. Defendants had provided documents and interrogatory responses with information regarding class size, net worth, identification of all potential class members and damages calculations. See letter dated Dec. 19, 2014 (DE 23) of Arthur Sanders, counsel for defendant. The parties then participated in extended settlement negotiations under Court supervision, and reached agreement on the terms of the class settlement before settling the amount of fees.

Significantly, plaintiffs' counsel recommend that this Court approve the settlement. Mr. Kleinman, Mr. Thomasson, Mr. Mauro

and Mr. Bromberg are all attorneys with substantial experience litigating consumer class actions and FDCPA claims, and devoted substantial time identifying, investigating, and settling the claims in this action.  They advised that they also analyzed the evidence with the assistance of experts.  This Court had the opportunity to observe counsel's performance in this action at a number of status, discovery and settlement conferences, and finds that their performance in both litigating and settling this case demonstrate their commitment to the Class and to representing the Class' interests.

Based on the Court's close supervision of the settlement process, this Court finds that the settlement was a product of extensive arm's length negotiations by experienced counsel. There is no hint of coercion or collusion that affected the process.  See In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 146 (E.D.N.Y. 2000) (citing In re Warner Communications Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).  Given these circumstances, the presumption of procedural fairness applies and I find the settlement procedurally fair.  In re Wal-Mart Stores, 396 F.3d at 116.

B.  Substantive Fairness

In evaluating the substantive fairness a class action settlement, district courts must consider the nine Grinnell factors enumerated by the Second Circuit: (1) the complexity, expense and likely duration of the litigation; (2) the reaction

of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974).

In applying these factors, the Court may neither substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action. <u>See</u> <u>Weinberger</u>, 698 F.2d at 74. Rather, the Court must determine whether the settlement is within a range that reasonable and experienced attorneys could accept considering all relevant risks, facts and circumstances. <u>See</u> <u>Weinberger</u>, 698 F.2d at 74; <u>Grinnell</u>, 495 F.2d at 455.

The settlement is substantively fair because all of the factors set forth in <u>Grinnell</u> weigh in favor of final approval.

     1.  <u>Complexity, Expense and Likely Duration of Litigation</u>

Although this case is not complex, continuing this litigation would have resulted in delay and further expense. A trial and any post-judgment motions and appeals would have required further expenditure of both time and money. Absent a

settlement, the costs incurred by continuing this litigation would likely have outweighed any potential recovery, particularly in light of the cap on statutory damages, as discussed below. In addition, the delay inherent in further litigation would reduce the value of any potential recovery. See Maley, 186 F. Supp. 2d at 361-62. On the other hand, the settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members.

    2. Reaction of the Class

    "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Maley, 186 F. Supp. 2d at 362-63. As discussed in further detail below, the notices of the settlement, which explained the formula for calculating each class member's award and informed class members of their right to object or to exclude themselves from the settlement, was sent to eligible individuals and 3,710 class members filed claims. No class member objected to the settlement and eight persons sought to be excluded from the class.[4] This factor weighs in favor of

_____

[4] Class member Sophia Morgan submitted a claim form and appeared at the fairness hearing. She apparently incorrectly believed that she would be receiving the entire settlement fund, rather than a portion. After being advised how her share of the settlement would be determined, she expressed a desire to withdraw her claim and opt-out of the settlement. I directed her to confer with Mr. Kleinman as to whether she wanted to persist in withdrawing her claim. Mr. Kleinman subsequently advised that he called and left a voicemail message to which she did not
                                                        (continued...)

approval of the settlement.  See Beckman v. KeyBank, N.A., 293
F.R.D. 467, 475 (S.D.N.Y. 2013) (concluding class reaction was
positive where none objected and eight of 1,735 members opted
out); see also Wright v. Stern, 553 F.Supp.2d 337, 345 (S.D.N.Y.
2008) (Chin, D.J.) ("The fact that the vast majority of class
members neither objected nor opted out is a strong indication
that the proposed settlement is fair, reasonable, and adequate");
Prasker, 2010 WL 476009, at *4 (granting final approval where no
class members objected and only 2 class members opted out).

### 3. The Stage of the Proceedings and Amount of Discovery Completed

The stage of the proceedings and the amount of discovery
completed are evaluated to ensure that the parties "have a clear
view of the strengths and weaknesses of their cases."  In re
Warner Comm. Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985),
aff'd, 798 F.2d 35 (2d Cir. 1986).  This litigation settled after
defendant provided written discovery concerning the extent of the
class, net worth and the amounts that were collected from class
members.  The discovery obtained was sufficient for plaintiffs'
counsel to analyze the merits of the case and damages before
engaging in settlement negotiations.  See Maley, 186 F. Supp. 2d
at 364. Thus, this factor weighs in favor of approving the
settlement.

---

[4](...continued)
respond.  See Exh. C to Mr. Thomasson's Nov. 24, 2015 letter, DE
43.  Since Ms. Morgan has not submitted any further communication
evidencing her desire to withdraw her claim or commenced a
separate action, she should be included as a member of Class #1.

4. <u>Risks in Establishing Liability and Damages and
Maintaining the Class Action Through Trial</u>

The fourth, fifth and sixth <u>Grinnell</u> factors also support
final approval. "Litigation inherently involves risks," both in
establishing liability and damages. <u>In re PaineWebber Ltd.
P'ships Litig.</u>, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), aff'd, 117
F.3d 721 (2d Cir. 1997). One purpose of a settlement is to avoid
the uncertainty of a trial on the merits.

Defendant had initially denied liability and expressed its
intent to oppose class certification. Even if the Court were to
grant a class certification motion, the defendants could seek to
file a Fed. Rule Civ. Proc. 23(f) appeal or later move to
decertify, which would require additional rounds of briefing and
delay. Settlement eliminates the risk, expense and delay
inherent in the litigation process. <u>See</u> <u>Campos v. Goode</u>, No.
Civ. 224, 2011 U.S. Dist. LEXIS 22959, at *14 (S.D.N.Y. Mar.
2011).

5. <u>Collectibility and Defendants' Ability to
Withstand a Greater Judgment</u>

It is not certain that defendant could withstand a greater
judgment. Defendants' insurer disclaimed coverage for actual
damages. Moreover, recovery in FDCPA class actions is limited to
$1,000 statutory damages for each named plaintiff, and the lesser
of $500,000 or one percent of the net worth of the "debt
collector" defendant. <u>See</u> 15 U.S.C. § 1692k(a)(2)(B). Also,
recovery under the NY GBL § 349(h) is limited to actual damages.
Given these limitations on damages recoverable, the plaintiffs

are not likely to obtain a larger judgment at trial since the settlement amount to the settlement class represents that maximum actual and statutory damages allowable under the FDCPA and the NY GBL. See Mem. of Law in Support of Consent Motion for an Order of Approval, p. 17 (DE 40-1). Counsels' concern that defendants' resources would be depleted had the cases proceeded to trial, was a significant factor in plaintiffs' decision to settle their claims and, in this Court's view, weighs in favor of approval.[5] See id.; Maley, 186 F. Supp. 2d at 365 (considering defendant's "dire financial condition" and recognizing that "obtaining a greater recovery than provided by the settlement would have been difficult").

6. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All Risks of Litigation

The determination of a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'" In re PaineWebber Ltd. P'ship Litig., 171

---

[5] In earlier discussions regarding the statutory cap on damages based on net worth of the defendants, the parties were in agreement as to the net worth of C. Tech. It is not clear whether the net worth of the individual defendants also factored into discussions. However, there is an absence of any specific allegations in the complaint regarding the conduct of the individual defendants. Although courts in the Second Circuit have held that individuals may be found personally liable for engaging in prohibited conduct, dismissal of the complaint is appropriate where there is no specific conduct alleged. Allison v. Whitman & Meyers, LLC, No. 13 CV 696, 2015 WL 860757, at *2-3 (W.D.N.Y. Feb. 27, 2015) (citations omitted). In any event, collection from individuals frequently poses even more problems than from businesses with limited assets and income.

F.R.D. at 130) (quoting Milken, 150 F.R.D. at 66).  As the Second

Circuit has noted, "[t]he fact that a proposed settlement may

only amount to a fraction of the potential recovery does not, in

and of itself, mean that the proposed settlement is grossly

inadequate and should be disapproved."  Grinnell, 495 F.2d at

455.  "In fact, there is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery."

Id. at 455 n.2.

    Assuming that plaintiffs could have obtained a judgment in

their favor, any victory may be illusory since plaintiffs would

not likely obtain a larger judgment, due to potentially

applicable statutory limitations on damages.  In any event, class

members are not likely to receive more than what they will

receive under the Settlement Agreement, since class members who

suffered actual damages will be made whole and the consumers who

did not pay any convenience charge will receive more than they

would recover had there not been a settlement.  See Lizondro-

Garcia v. Kefi LLC, 300 F.R.D. 169, 180 (S.D.N.Y. 2014)

(preliminarily approving settlement as being within range of

reasonableness where plaintiffs would receive nearly all of their

actual damages"); Ceka v. PBM/CMSI Inc., No. 12 Civ. 1711, 2014

WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014).

    Thus, this Court finds that the settlement reached is well

within the range of reasonableness given the risks and delay of

continued litigation measured against the value of obtaining

certain compensation more quickly.  See Gilliam v. Addicts Rehab

Ctr. Fund, 2008 WL 782596, at *5 (S.D.N.Y. 2008); In re "Agent

Orange" Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y.

1985) ("much of the value of a settlement lies in the ability to

make funds available promptly").

      7.  The Plan of Allocation

The plan of allocation must be fair and adequate.  Maley,

186 F. Supp. 2d at 367.  "An allocation formula need only have a

reasonable, rational basis, particularly if recommended by

experienced and competent class counsel."  Id.  In determining

whether a plan of allocation is fair, courts look primarily to

the opinion of counsel.  See PaineWebber, 171 F.R.D. at 133.

That is, "[a]s a general rule, the adequacy of an allocation plan

turns on whether counsel has properly apprised itself of the

merits of all claims, and whether the proposed apportionment is

fair and reasonable in light of that information."  Id.

Courts also consider the reaction of the class to a plan of

allocation.  See Maley, 186 F. Supp. 2d at 367; PaineWebber, 171

F.R.D. at 126.  The notices to class members, which this Court

reviewed and approved, were sent to 79,239 eligible individuals

for whom plaintiffs' counsel and the Claims Administrator were

able to obtain addresses.

In light of the views of counsel, the lack of objections by

class members, the settlement amounts to be paid, and the

attendant risks of litigation, I find that the settlement

provides the class a fair recovery for all class members.

In sum, because all the relevant factors weigh in favor of the settlement, I hereby grant the motion for final approval and unconditionally approve the settlement as set forth in the Settlement Agreement.

III. <u>Dissemination of the Notices</u>

This Court previously reviewed the notices to prospective class members. As discussed at the hearing for preliminary approval of the settlement, the notices fairly and adequately advised class members of the terms of the settlement, as well as the right of members to opt out of the class, to object to the settlement and to appear at the fairness hearing.

Brian Radetich, Client Service Manager for Heffler Claims Group (the "Claims Administrator") states in his declaration (DE 49-2, "Radetich Decl.") that notices of the settlement were timely sent by first-class mail to each eligible individual. <u>See id.</u> at ¶ 4-7. After receiving addresses from class counsel, the Claims Administrator first updated the list through the USPS Change of Address database before mailing notices to class members. <u>Id.</u> at ¶ 4. The Claims Administrator mailed notices to 79,239 potential class members, and after receiving 1,587 returned notices, re-mailed notices to 947 class members for whom the administrator was able to obtain updated mailing or forwarding addresses. <u>Id.</u> at ¶ 8.

This Court finds that Class Members were provided the best notice practicable under the circumstances and that the notice

and distribution of such notices comported with all constitutional requirements, including due process.

Finally, the Court approves Heffler Claims Group as the Claims Administrator. This company is experienced in handling class action settlements. Radetich Decl. at ¶¶ 2-3.

## IV. Service Award to Plaintiffs

Plaintiffs Jennifer Babcock and Linda Campbell-Hicks, the Class Representatives, each seek service awards of $3,500.00,[6] in addition to the statutory damages of $1,000 they will receive under the Settlement Agreement, as well the actual damages of $153.00 to Ms. Babcock.

Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs. See Parker v. Jekyll & Hyde Entm't Holdings, LLC, 2010 WL 532960, at *1 (S.D.N.Y. 2010); McMahon v. Oliver Cheng Catering and Events, LLC, 2010 WL 2399328, at *8-9 (S.D.N.Y. 2010); see also Roberts v. Texaco, Inc., 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997). Such awards are within the discretion of the court. See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting Roberts v.

---

[6] In his post-fairness hearing declaration, counsel Joseph Mauro confusingly stated that the defendant had agreed to pay his client, plaintiff Campbell-Hicks, "an incentive award of $4,000.00, upon the Court's approval." See Decl. of Plaintiff's Attorney Joseph Mauro at ¶ 13 (DE 29).

<u>Texaco, Inc.</u>, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). "'Courts look for the existence of special circumstances when determining whether an award is justified and, if so, in what amount.'" <u>Torres v. Toback, Bernstein & Reiss LLP</u>, No. 11-CV-1368, 2014 WL 1330957, at *2 (E.D.N.Y. Mar. 31, 2014) (quoting <u>In re AOL Time Warner ERISA Litig.</u>, No. 02 Civ. 8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007)). "Such circumstances include the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim and of course, the ultimate recovery." <u>Frank</u>, 228 F.R.D. at 187 (quoting <u>Roberts</u>, 979 F. Supp. at 200).

Class counsel state that Ms. Campbell-Hicks attended one of the settlement conferences held by the Court and both class representatives were actively engaged in consulting with their counsel regarding the actions. However, there has been no showing that plaintiffs bore any risk in prosecuting this action, incurred out-of-pocket expenses or devoted a significant amount of time on tasks related to this litigation. The plaintiffs were not deposed nor were they required to execute declarations or other writings to be filed in this action prior to settlement. Moreover, the proposed $3,500 award is multiples of the $1,000 maximum statutory damages that plaintiffs would have recovered

had they brought individual actions. In fact, under the settlement, plaintiffs will receive both the maximum statutory damages and incentive awards which are significantly more than the recovery afforded class members under the settlement. See Torres, 2014 WL 1330957, at *4 (expressing concern over "grossly disproportionate" incentive award of $8,500 compared to $60 or $67 for class members); Sheppard v. Consol. Edison Co. of N.Y., Inc., No. 94-CV-403, 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (proposed incentive award "grossly disproportionate to the compensation to be paid to the absent class members the plaintiffs seek to represent"). Nonetheless, some service award is appropriate since the named plaintiffs did contribute to a successful class action suit. Thus, I approve a service award to each plaintiff of $2,500, which I find is more than reasonable under the circumstances. See Ortiz v. Chop't Creative Salad Co. LLC, 89 F. Supp. 3d 573, 582-83 (S.D.N.Y. 2015) (denying incentive award); Torres, 2014 WL 1330957, at *4 (suggesting $1,000 incentive ward is appropriate in FDCPA case); Zimmerman v. Portfolio Recovery Assocs., LLC, No. 09 Civ. 4602, 2013 WL 1245552, at *8 (S.D.N.Y. Mar. 27, 2013) (denying incentive award in FDCPA case); In re AOL Time Warner, 2007 WL 3145111, at *4 (reducing incentive awards from $20,000 to $1,000 and $500). In accordance with the parties' agreement, the disallowed portion of the service award in the amount of $2,000 should be added to the $12,000.00 fund for Class #1.

V. <u>Attorneys' Fees</u>

Attorneys who create a common fund from which members of a class are compensated are entitled to "a reasonable fee--set by the court--to be taken from the fund." <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court[.]" <u>Id.</u> at 47. In a case where the requested attorneys' fees will be paid directly by defendant rather than drawn from a common fund, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is not conflict of interest between attorneys and class members." <u>Dupler v. Costco Wholesale Corp.</u>, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (quoting <u>McBean v. City of N.Y.</u>, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). In fact, the parties here did not negotiate the amount of attorneys' fees to be paid by defendants until after an agreement was reached on the amount of money to be paid to the class. Since the amount of the attorneys' fee will not affect the class recovery, this weighs in favor of finding the fee reasonable. <u>See Shapiro v. JP Morgan Chase</u>, No. 11 Civ. 8331, 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014); <u>Dupler</u>, 705 F. Supp. 2d at 243; <u>In re Sony SXRD Rear Projection Television Class Action Litig.</u>, No. 06 Civ. 5173, 2008 WL 195267, at *15 (S.D.N.Y. May 1, 2008).

Fees may be awarded under either the lodestar or percentage of the funds methods, but in this Circuit, the percentage method is the "trend." <u>McDaniel v. County of Schenectady</u>, 595 F.3d 411,

417 (2d Cir. 2010); <u>Wal-Mart Stores</u>, 396 F.3d at 121.  This is
because:

> [T]he percentage method directly aligns the interests
> of the class and its counsel and provides a powerful
> incentive for the efficient prosecution and early
> resolution of litigation . . . .  [It] is also the most
> efficient means of rewarding the work of class action
> attorneys, and avoids the wasteful and burdensome
> process - to both counsel and the courts - of preparing
> and evaluating fee petitions . . . .

<u>In re Lloyd's American Trust Litig.</u>, No. 96 Civ. 1262, 2002 WL
31663577, at *25 (S.D.N.Y. Nov. 26, 2002).  In addition, the
percentage method is intended to mirror the private marketplace
where contingent fee attorneys typically negotiate percentage fee
arrangements with their clients.  See <u>In re Am. Bank Note
Holographics, Inc.</u>, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).
However, either approach is appropriate.  See <u>McDaniel</u>, 595 F.3d
at 419.

Regardless of which method is utilized, courts in this
Circuit must consider the following factors in determining what
constitutes a reasonable fee: (1) the time and labor expended by
counsel; (2) the magnitude and complexities of the litigation;
(3) the risk of the litigation; (4) the quality of
representation; (5) the requested fee in relation to the
settlement; and (6) public policy considerations.  See
<u>Goldberger</u>, 209 F.3d at 50.

If the Court were to employ the percentage method in this
case, the fees and costs sought would amount to approximately 48%
of the approximately $175,000 total settlement.  Such a high

percentage is permissible, however, because fees were negotiated after an agreement was reached on the class members' recovery and because higher percentages are generally allowed for relatively small total settlements. See Seekamp v. It's Huge, Inc., No. 09-CV-18, 2014 WL 7272960, at *1 (N.D.N.Y. Dec. 18, 2014); In re Independent Energy Holdings PLC, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) ("the percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement"); see also Savoie v. Merchants Bank, 166 F.3d 456, 461 (2d Cir. 1999) (affirming use of lodestar approach where attorneys' fees were determined after settlement payment to class).

On the other hand, the FDCPA allows for an award of "the costs of the action, together with a reasonable attorney's fee as determined by the court." See 15 U.S.C. § 1692k(a)(3). Statutory fee shifting provisions are designed in part to secure counsel for plaintiffs whose claims are too small to attract qualified counsel under traditional fee arrangements. See Tucker v. City of New York, 704 F. Supp. 2d 347, 359 n.10 (S.D.N.Y. 2010) (requiring proportionality in small cases "would generate fees so low that they would attract only lawyers willing, in effect, to appear pro bono or to accept being vastly undercompensated"); Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 520 n.7 (S.D.N.Y. 2002). In this case,

given the efforts expended by counsel which benefitted not only the individual plaintiffs but class members, a larger percentage is necessary to compensate counsel for the work completed. See Frank, 228 F.R.D. at 189.

Under the lodestar method, the "lodestar" is calculated by using "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which results in a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-53 (2010) (discussing lodestar methodology). A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)). The determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

The "community" is generally considered the district where the
district court sits. See Arbor Hill, 522 F.3d at 190.

Plaintiff Babcock requests attorneys' fees and costs in the
amount of $55,000 and plaintiff Campbell-Hicks requests fees of
$30,000. Plaintiff Babcock's counsel provide billing records
reflecting 239.88[7] hours of work that Mr. Bromberg and Mr. Mauro
performed at an hourly rate of $350, and $1,307.47 in costs
incurred; and counsel for plaintiff Campbell-Hicks provide
records reflecting approximately 89 hours of work by Mr. Kleinman
and Mr. Thomasson billed at an hourly rate of $300,[8] and $475 in
costs incurred. See Thomasson Decl. (DE 40-3) at ¶¶ 17, 18, 22;
Kleinman Decl. (DE 40-4) at ¶ 8; letter from Andrew T. Thomasson
dated November 24, 2015 and attachments (DE 43); letter from
Andrew T. Thomasson dated November 30, 2015 and attachment (DE
44); Bromberg Decl. (DE 30 in Campbell-Hicks Action) at ¶¶ 3, 36;
Mauro Decl. (DE 29 in Campbell-Hicks Action) at ¶¶ 3, 16.

Applying the lodestar method, the award plaintiff Campbell-
Hicks' counsel seeks is slightly less than the amount they could
have charged a client. Similarly, the fees sought by counsel for
plaintiff Babcock are less than their lodestar, even after Mr.
Thomasson took a 20% reduction to account for any duplication and

---

[7] In their declarations, Babcock's counsel claim that they
spent 254.1 hours litigating this case but their billing records
show 239.88 hours.

[8] Although Mr. Kleinman states in his declaration that his
billing rate is $350 per hour, his billing records reflect a rate
of $300 per hour.

omitted billings for time spent by his law clerk and seeks no multiplier. See Thomasson Decl. at ¶ 17. In addition, the fees sought are inclusive of any expenses incurred.

The rates requested of $300-$350 per hour are within the range of reasonableness for FDCPA attorneys of similar background and experience. See Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 2d 328, 347 (E.D.N.Y. 2014) (approving rates in FDCPA case of $325-$400 per hour); Tito v. Rubin & Rothman, LLC, 2014 WL 1092845, at *3 (E.D.N.Y. 2014) (discussing range of partner rates in FDCPA cases of $300-$400 per hour). After reviewing the detailed time records submitted by class counsel, this Court also finds the time spent litigating this action was appropriate for the work completed. While there may have been some duplication of work given the number of attorneys involved, Mr. Thomasson counsel for Ms. Campbell-Hicks, has taken a 20% reduction in fees and Mr. Bromberg is seeking compensation at a lower hourly rate that ordinarily sought in this district by attorneys with comparable experience. They also do not include compensation for additional time and effort they will be required to expend administering the settlement going forward also supports their fee request. See deMunecas v, Bold Food, LLC, No. 09 Cv. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010).

Thus, I find that the the fees requested are reasonable under the circumstances of this case and grant the amounts requested.

<u>CONCLUSION</u>

For the foregoing reasons, the plaintiffs' motion for approval of the class settlement (DE 40, 1:14-cv-03124; DE 26, 2:14-cv-03576) is granted as follows: plainti

1.  The Settlement Agreement filed on July 13, 2015 (DE 30-2) is unconditionally approved, and, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the following two classes described in the Settlement Agreement are certified for settlement purposes:

> (1) All consumers to whom Defendants mailed a written communication in connection with an attempt to collect a debt, which included a statement that a "$3.00 convenience fee will be added for credit card payments," regardless of whether such fee was paid or not, during a period beginning May 19, 2013, and ending June 9, 2014 ("Class #1"); and

> (2) All consumers to whom Defendants mailed a written communication in connection with an attempt to collect a debt, which included a statement that a "$3.00 convenience fee will be added for credit card payments," and who paid such a fee, during a period beginning May 19, 2011, and ending June 9, 2014 ("Class #2").

2.  The Court approves the "Plan of Allocation" governing the payments to Class Members and directs the Parties and the Claims Administrator to implement and disburse those payments in accordance with the terms of the Settlement Agreement, except that the fund for Class #1 members shall be increased by unclaimed monies from the fund for Class #2 members and by the $2,000 deducted from the service awards to the plaintiffs, as discussed above.  Also, counsel should insure that the list of class members should include the persons whose late claims were

allowed at the fairness hearing and the persons who may have filed claims directly with the Court, but not with the Claims Administrator, as discussed above.  The Court further directs that any funds that remain in the settlement fund after the void date on the Settlement Agreement shall be donated as a cy pres award to the National Consumer Law Center with all funds strictly earmarked for the benefit of New York consumers.

3.  The Court approves the payment of attorneys' fees and costs of $55,000 to counsel for plaintiff Babcock and $30,1000 to counsel for plaintiff Campbell-Hicks.

4.  The Court approves payment of a service award of $2,500 to each of the plaintiffs, which shall be in addition to payments for statutory damages of $1,000 each under the Settlement Agreement, $153.00 to plaintiff Jennifer Babcock for actual damages, and any amount they are entitled to receive as members of Class #1.

5.  Without affecting the finality of this Order in any way, this Court hereby retains jurisdiction over consummation and performance of the Agreement.

6.  The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 27, 2017

                              /s/_____
                              MARILYN DOLAN GO
                              UNITED STATES MAGISTRATE JUDGE